IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| MALCOLM R. HUTCHINS,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>PAUL R. HUTCHINS and CAPITAL GAINS, LLC, a South Carolina Limited Liability Company,<br><br>　　　　　　Defendants. | Civil Action No. 9:24-cv-01174-DCN<br><br>**Complaint**<br><br>(Declaratory Judgment)<br><br>Non-Jury |

Plaintiff alleges as follows:

### Parties and Jurisdiction

1.　　Plaintiff MALCOLM R. HUTCHINS ("Malcolm"[1] or "Plaintiff") is a citizen and resident of the State of Arkansas.

2.　　Defendant PAUL R. HUTCHINS ("Paul" or "Defendant") is a citizen and resident of the State of Texas.

3.　　Defendant CAPITAL GAINS, LLC, ("Capital Gains, LLC" or "Defendant") is a South Carolina limited liability company.

4.　　Upon information and belief, Paul, or Paul and his wife, are the sole members of Capital Gains, LLC and they are both citizens and residents of the State of Texas.

---

[1] The parties are referred to by their first names only for ease of reference given that they have the same last name.

5. This lawsuit pertains to real property located on Hilton Head Island (Beaufort County), South Carolina, and this lawsuit involves matters of South Carolina law.

6. This Court has diversity jurisdiction over the parties and claims in this action under 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

7. Venue in this Court is proper under 28 U.S.C. § 1391(b)(2) because the real property that is the subject of this action is located in Beaufort County, South Carolina, and the most substantial part of the events or omissions giving rise to the cause of action occurred in Beaufort County, South Carolina.

## For a First Cause of Action
### (Declaratory Judgment)

8. The previous paragraphs are incorporated by reference.

9. Malcolm and Paul are adult brothers.

10. Years ago, Malcolm and Paul formed an actual or de facto partnership and/or contractual agreement whereby they would purchase real property for purposes of investment, and then sell the property and use the proceeds from the sale (i.e., the appreciation of the property) to purchase another investment property.

11. Originally they purchased investment properties on Hilton Head Island (Beaufort County), South Carolina, which investment properties consisted of residential condominiums acquired over the years.

12. From the beginning of their first investment property acquisition and continuing thereafter over the years, Malcom and Paul shared the expenses for investment properties that were not covered by the rental income generated by the properties, but they never withdrew (distributed)

the rental revenue generated by the properties or the gains realized on the sale of the properties. Instead, they rolled the revenue and gains generated by the rental income and sale of one investment property to fund the acquisition of the next investment property.

13. Over the years, they repeated this process of buying investment properties, evenly sharing the costs of acquiring and operating the properties, and then selling the properties and using the retained rental revenue and gains from the sale of properties to fund the acquisition of their next investment property.

14. In or around 2008, they sold the Hilton Head Island investment properties and used the proceeds from the sale to purchase investment properties in Bentonville, Arkansas, with the Bentonville properties at various times including a vacant lot, three homes, and commercial buildings.

15. They held the Bentonville investment properties for several years and then sold the Bentonville investment properties and used the proceeds from the sale to purchase several vacant lots on Hilton Head Island.

16. Because the Hilton Head Island lots were not generating any rental revenue, they decided to sell all but one of the lots and use the proceeds from the sale of the other lots to fund the construction of a beach house on the remaining lot. That remaining lot and the home constructed thereon is a beach home located at 3 Firethorn Way, Hilton Head Island, South Carolina 29928 (TMS No. R550 015 0025 0000), and that home is the subject of this action (hereinafter the "Home").

17. They obtained a construction loan to fund the construction of the Home, but the construction loan was soon paid off using the proceeds of the sale of their other lots on Hilton Head Island.

18. Malcolm is an optometric physician.

19. Paul's career has been working in the banking industry. He worked for the FDIC and/or RTC in dealing with failing banks during the 1980s through around 2003. He had a team of people that would take over and operate failed or failing banks.

20. Because of Paul's extensive experience in the banking industry, he was always the one that handled the financial aspects of the acquisition, rental, and sale of the various investment properties that Malcolm and Paul acquired over the years, including the Home.

21. Malcolm trusted Paul, and he relied on Paul to properly manage the finances of their investment properties over the years.

22. Paul always insisted that any loans used to acquire or development their investment properties should be placed only in his name because he claimed that the loan rate would be better and it would simplify financing issues if just his name was on the note.

23. The Home is a rental property managed by a property management company located on Hilton Head Island, the Vacation Rental Company.

24. The Home should be mortgage free, plus there should be a bank account containing a very sizeable amount of accumulated rental proceeds generated by the various rental properties that Malcom and Paul purchased and sold over the years, including the rental proceeds for the Home.

25. In 2023, Malcolm asked Paul about the rental income and the status of a distribution of some of the accumulated rental proceeds.

26. Paul responded to Malcolm's inquiry in a vague and defensive manner.

27. Upon further questioning by Malcolm, Paul indicated that he would send Malcolm a distribution and accounting records, but he never did, and he then ceased responding to Malcolm's inquiries.

28. Malcolm has now discovered that Paul jointly titled the Home in the name of Paul and Paul's wife's, with Malcolm never having been listed on the title to the property.

29. Malcolm has also discovered that Paul transferred title of the home to Defendant Capital Gains, LLC.

30. Malcolm was never informed of the transfer of title to Capital Gains, LLC.

31. Upon information and belief, Paul, and/or Paul and his wife, are the sole members (i.e., owners) of Capital Gains, LLC.

32. To Malcolm's knowledge, Paul is not presently employed.

33. Malcolm is also concerned that, and is informed and believes that, Paul has knowingly placed the title of the Home, and the revenues generated by the Home and their prior investment properties, into a company and into a bank account that are controlled solely by Paul in order to deprive Malcolm of access to the financial information concerning the Home and thereby allowing Paul to use all of the accumulated revenues generated by the Home and by the prior investment properties for his own personal use without sharing the revenues with Malcolm.

34. Paul's acts as set forth above constitute a breach of his partnership fiduciary duties and obligations to Malcolm and/or a breach of his contractual obligations to Malcolm.

35. The disputes and issues existing between the parties represent a current, real, substantial and justiciable controversy, and a declaratory judgment will remove legal uncertainties and provide a full resolution of the controversy between the parties.

NPDocuments:62682418.1

36. A declaratory judgment providing a determination of the issues between the parties will serve the interests of justice and judicial economy.

37. Pursuant to 28 U.S.C. §2201 and Rule 57, Federal Rules of Civil Procedure, Malcolm is entitled to a declaratory judgment addressing and resolving the disputes between the parties, and declaring the rights and obligations of the parties to regarding the Home and the accumulated revenues, including without limitation a declaration and order for the following relief:

(a) a declaration that Malcolm is a one-half owner of the Home and is entitled to one-half of all past, present, and future revenues generated by the Home and by their prior investment properties;

(b) that Malcolm's name be included on the title to the Home, or alternatively, that the Home be sold and the proceeds from the sale and accumulated revenues be divided evenly between Malcolm and Paul;

(c) that Paul be compelled to produce a complete, detailed, and accurate accounting of all financial matters and transactions related to the Home and prior accumulated revenues, and produce all a copy of all accounting records related thereto;

(d) that Paul be compelled to produce the operating agreement for Capital Gains, LLC and produce all of its financial statements and tax records for each and every year since it was formed;

(e) that Paul be enjoined from spending, disbursing, transferring, or otherwise using any revenues or assets related to the Home or prior investment properties without Malcolm's express written consent, pending resolution of this lawsuit; and

(f) such other and further relief as may be just, necessary, or proper under the circumstances.

WHEREFORE, Plaintiff prays for an order granting a declaratory judgment and the declaratory relief as requested hereinabove, and such other and further relief as this Court deems just and proper.

[Signature appears on next page]

|  |  |
|---|---|
| | <u>*s/David Parrish*</u><br>David J. Parrish (Fed Id No. 6261)<br>Maynard Nexsen PC<br>205 King Street, Suite 400<br>Charleston, South Carolina 29401<br>843-720-1771<br>dparrish@maynardnexsen.com<br>**Attorneys for Plaintiff Malcolm R. Hutchins** |
| March 8, 2024 | |

NPDocuments:62682418.1